UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:11-cr-72 JD |
| ) | |
| ZACHARY B. HUENERKOPF, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

On April 23, 2012, Defendant, Zachary B. Huenerkopf ("Huenerkopf"), filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. On June 29, 2012, the United States of America filed a response.

On May 22, 2012, this matter was referred to the undersigned to prepare a report and recommendation. For the following reasons, the undersigned **RECOMMENDS** that Huenerkopf's motion to vacate be **DENIED**.

**I.    RELEVANT BACKGROUND**

Huenerkopf was engaged in the sale and distribution of marijuana. Despite a prior felony conviction, Huenerkopf possessed a firearm, specifically, a .40 caliber handgun, for the purpose of protecting himself while engaged in drug dealing. Doc. No. 13 at 3.

On March 29, 2011, Huenerkopf got into a dispute with one of his customers over the quality of the marijuana Huenerkopf had sold. Huenerkopf then shot the man in the hip. He also shot an innocent bystander, his uncle, who had attempted to intervene and diffuse the situation. Both victims were hospitalized. Huenerkopf's uncle suffered abdominal injuries classified as life threatening and requiring surgery. Doc. No. 22 at 4-6.

After the shooting, Huenerkopf fled the scene, resulting in a nearby school being placed on lockdown. Doc. No. 22 at 15. Later that day, March 29, 2011, Huenerkopf turned himself in to the South Bend Police. Doc. No. 15 at 4.

On June 8, 2011, a federal grand jury returned a three count indictment against Huenerkopf, charging him with distribution of marijuana in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Doc. No. 1.

On June 16, 2011, the undersigned appointed Anthony Kowals as counsel for Huenerkopf. Doc. No. 7. However, on June 20, 2011, Andre Gammage entered his appearance as retained counsel for Huenerkopf. Doc. No. 8. Gammage represented Huenerkopf for the remainder of the proceedings.

On August 17, 2011, Huenerkopf appeared before the undersigned to change his plea from not guilty to guilty to Counts 2 and 3 of the indictment pursuant to a written plea agreement. Doc. No. 16. That same day, the undersigned issued a report and recommendation that the District Judge accept Huenerkopf's guilty plea. Doc. No. 17. On November 17, 2011, the District Judge accepted the report and recommendation and Huenerkopf's guilty plea. A draft presentence investigation report was prepared by the probation office. Doc. No. 19. Huenerkopf's counsel objected. Doc. No. 21.

On November 17, 2011, Huenerkopf was sentenced by the District Judge to 163 months imprisonment followed by a supervised release term of 3 years. Huenerkopf was also ordered to pay a special assessment of $200. Doc. No. 25. Pursuant to the plea agreement, Count 1 was dismissed. Doc. No. 26. Huenerkopf did not file a direct appeal.

On April 23, 2012, Huenerkopf filed his § 2255 motion, *pro se*, in which he alleges that he received ineffective assistance of counsel because: (1) his guilty plea was not made knowingly and intelligently, (2) his retained counsel did not object to paragraph 16 of the Presentence Investigation Report (PSR) and (3) his attorney did not object to paragraph 18 of the PSR.

**II.   ANALYSIS**

Although Huenerkopf argues his guilty plea was not made knowingly and intelligently made, a review of the record and the plea hearing on August 17, 2011, shows the opposite. And though he also argues that his attorney failed to object to two paragraphs of the PSR, the record reveals that he explicitly waived those issues and even assuming he did not, those issues do not warrant relief under 28 U.S.C. §2255.

**A.   Waiver**

While 28 U.S.C. §2255 allows a criminal defendant to collaterally attack his judgment and sentence, he may also waive his right to bring a §2255 motion. "[W]aivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). In order to prevail when a waiver is present, the petitioner must establish that the waiver was not knowingly or voluntarily made, or demonstrate ineffective assistance of counsel with respect to the negotiation of the waiver. *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000). Section 2255 petitioners have to allege specific factual details in order to even receive an evidentiary hearing on the petition and a response from the government. *See Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002). "An

3

ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001).

Huenerkopf arguments require the Court to examine the record and plea proceeding to determine whether; (1) his guilty plea was knowingly and intelligently made and (2) he waived any claims of ineffective assistance of counsel.

### 1. Plea Hearing of August 17, 2011

After referral from the District Judge, the undersigned conducted a Rule 11, Fed. R. Crim. Pro. proceeding in which Huenerkopf was placed under oath and responded to the Court's questions. One of the Court's first questions was "Have you had sufficient time to discuss this case in general and this proposed plea agreement in particular with Mr. Gammage? Transcript (TR) of plea proceedings on August 17, 2011. Huenerkopf answered "Yes, sir." TR 4 The Court followed his answer with "And are you satisfied with his representation?" TR4 And he again answered "Yes, sir." TR 4

The Court then advised Huenerkopf of his constitutional rights at trial which he would be waiving by pleading guilty. TR 5-8 The Court also explained the maximum penalty he faced by pleading guilty and the effects of the sentencing guidelines. TR 10-12 Huenerkopf was specifically advised by the Court that a presentence report will be prepared:

> That report then will go into the nature and circumstances of the offense. It will go into your criminal history, and then the report will calculate what they believe the Guidelines are. Now, you and your attorney will be able to see that report, so if there's something in there that you don't think is correct or you think they've miscalculated the Guidelines, you can bring it to the Court's attention. TR 12

The Court then specifically addressed the written plea agreement:

THE COURT: All right. Now, there's a written plea agreement, correct?

MR. HUENERKOPF: Yes, sir.

THE COURT: Have you read it?

MR. HUENERKOPF: Yes, sir.

THE COURT: Have you discussed it with your attorney?

MR. HUENERKOPF: Yes, sir.

THE COURT: Do you understand it?

MR. HUENERKOPF: Yes, sir.

THE COURT: And did you sign it?

MR. HUENERKOPF: Yes, sir.

THE COURT: All right. Since you said "yes" to those questions, I'm going to assume that's true." TR 13

The Court then specifically addressed the waiver provision of the written plea agreement:

THE COURT: Okay. Then if you would take the plea agreement, I would like to draw your attention specifically to Page 3, Subparagraph 9(d), and very near the bottom, about three lines up from the bottom, there's a sentence that says "With that understanding, I expressly waive my right to appeal my conviction and my sentence any restitution order to any court, on any ground, including any claim of ineffective assistance of counsel."

What that means is, as we discussed earlier, if you went to trial and if you were found guilty at trial, you have the right to appeal, and that would be with the assistance of counsel to the United States Court of Appeals. But what you're doing here in this paragraph, in that particular sentence that I read, is you're waiving that right to appeal, so will you not be able to appeal your conviction or your sentence or your restitution order or the manner in which it was imposed.

Do you understand that?

MR. HUENERKOPF: Yes, sir.

THE COURT: All right. That's important. TR 13-14

5

And finally, the Court informed Huenerkopf :

> So what all this means is, if you receive a sentence that is more severe than what you thought you were going to get, maybe more severe than what your lawyer told you or what the Guidelines recommend or even what the United States argues to the Court, you'll not be able to withdraw your guilty plea as a result of that, nor, as we've just discussed, will you be able to appeal.
>
> Do you understand that?
>
> MR. HUENERKOPF: Yes sir.  TR 15

### 2. Written Plea Agreement

As referenced by the Court, Huenerkopf's written plea agreement is even more explicit. It provides in part:

> I agree that the Court has jurisdiction and authority to impose any sentence within the statutory maximum penalty set for my offense(s) as set forth in this plea agreement. With that understanding, I expressly waive my right to appeal my conviction, my sentence and any restitution order to any Court on any ground, including any claim of ineffective assistance of counsel. I also agree not to contest my conviction, my sentence, any restitution order imposed, or the manner in which my conviction, the sentence, or the restitution order was determined or imposed on any ground including any alleged ineffective assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

Written Plea Agreement Doc. No. 13 at 3-4.  And as discussed previously, Huenerkopf admitted under oath to the Court that he had read, discussed with attorney, understood and signed his written plea agreement.  TR 13

Ultimately, the Court found that Huenerkopf: (1) had been advised of his Constitutional rights and had knowingly and intelligently waived them, (2) had been informed of the maximum penalties he faced by pleading guilty, and (3) had pleaded guilty freely and voluntarily.  TR 19

In light of this extensive record and previous findings, there simply is no factual support for Huenerkopf's argument that his guilty plea was not knowingly and intelligently made.  The

procedural safe guards of Rule 11 were followed. The record is complete. Huenerkopf's bold conclusionary allegations that his guilty plea was not knowingly and intelligently made is what Galbraith and Hodges have held to be insufficient. Huenerkopf knew what he was doing when he signed his written plea agreement and when he entered his guilty plea before the undersigned on August 17, 2011. His arguments to the contrary lack the specificity the law requires and the credibility to conclude otherwise.

### B. Failure to Object

Huenerkopf makes two claims under Grounds Two (2) and Three (3) that his retained counsel was ineffective because he failed to object to the calculation of his sentence under the Guidelines Range in the PSR, which was then adopted by the Court at sentencing. Ground 2 relates to the application of an enhancement under § 2A2.2(b)(2)(A), and Ground 3 relates to the imposition of a five-year sentence under 18 U.S.C. § 924(c).

In order to demonstrate ineffectiveness of counsel, a defendant must show that (1) counsel's assistance was objectively unreasonable, and (2) the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To show prejudice at sentencing, the defendant must show that "but for counsel's action or inaction, the movant would have received a shorter sentence." *Jennings v. United States*, 461 F.Supp.2d 818, 823-24 (S.D. Ill. 2006) (citing *Glover v. United States*, 531 U.S. 198, 202-04 (2001)). Huenerkopf argues that both § 2A2.2(b)(2)(A) and 924(c) were incorrectly applied and he would have received a shorter sentence.

#### 1. U.S.S.G. § 2A2.2(b)(2)(A)

The United States Sentencing Guidelines provide special instructions when a defendant is convicted and sentenced pursuant to 18 U.S.C. § 924(c)(1):

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction . . . . U.S.S.G. § 2K2.4, App. n.4.

In the PSR, the probation officer makes clear that the underlying offense for Huenerkopf's 18 U.S.C. § 924(c) violation is a drug trafficking offense, not a crime of violence. Doc. No. 22 at 7. The Commentary to § 2K2.4 prohibits application of specific offense characteristics only when determining the sentence for the offense underlying conviction or relevant conduct. U.S.S.G. § 2K2.4, App. n.4. Here, the crime serving as the underlying offense was the trafficking charge that was dismissed pursuant to the plea agreement. The specific offense characteristics that the court is barred from applying are thus only those pertaining to drug trafficking offenses as listed in U.S.S.G. § 2D1.1(b)(1)-(16). Because the probation officer arrived at the enhancement by application of U.S.S.G. § 2A2.2 to the 18 U.S.C. § 922(g)(1) charge, and not by improperly applying specific offense characteristics, Huenerkopf's argument fails.

### 2. 18 U.S.C. § 924(c)(1)

Section 924(c)(1) states in part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–
>
> (i) be sentenced to a term of imprisonment of not less than 5 years . . . . 18 U.S.C. § 924(c)(1)(A).

8

Section 924(c) defines "drug trafficking crime" to include violations of the Controlled Substances Act.

The PSR states, in bold type, Count II as "Possession of a Firearm in Furtherance of Drug Trafficking." Doc. No. 22 at 7 (emphasis omitted). The 924(c) charge is thus denoted as attached to the underlying offense of drug trafficking, which is part of the Controlled Substance Act, and not attached to the felon in possession charge. Although Huenerkopf was never convicted of the underlying trafficking offense, that is not required for conviction under 924(c). *See Young v. United States*, 124 F.3d 794, 800 (7th Cir. 1997) ("Section 924(c) is similar in concept, requiring proof of a predicate offense without requiring the conviction for that offense."); *see also United States v. Hill,* 971 F.2d 1461, 1464 (10th Cir. 1992) ("While proof of the underlying crime is necessary to convict under § 924(c), a defendant need not be convicted of the underlying crime in order to be convicted of § 924(c). A defendant need not even be charged with the underlying crime . . . .") (citations omitted).

The record here is sufficient to show the predicate evidence of drug trafficking. Huenerkopf knowingly and voluntarily entered his guilty plea admitting that he had engaged in the underlying offense of drug trafficking, and that is sufficient evidence of the underlying offense. *See Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) ("a defendant who knowingly and voluntarily enters a guilty plea admits not simply that he committed the acts charged in the indictment; it is an admission that he committed the crime charged against him."). Huenerkopf admitted, "In furtherance of my drug trafficking, including for protection, I possessed and carried a .40 caliber handgun." Doc. No. 13 at 3. For this reason, the imposition of a five-year sentence under § 924(c) was proper.

As a result, Huenerkopf cannot show that his lawyer's failure to object caused him to receive a longer sentence than he would have otherwise, and his arguments fail.

## III. CONCLUSION

Because Huenerkopf knowingly and intelligently pleaded guilty and waived his right to collaterally attack his sentence and because the sentence imposed was properly calculated, the undersigned **RECOMMENDS** that Huenerkopf's motion to vacate his sentence be **DENIED.** [Doc. No. 32].

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.
>
> **SO ORDERED.**

Dated this 18th day of July, 2012.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge